UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Heather Jennings, individually and on behalf of all similarly situated individuals, | Civil No. 12-00293 (SRN/TNL) |
| Plaintiff, | |
| v. | |
| Cellco Partnership d/b/a Verizon Wireless, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Michele R. Fisher and Reena I. Desai, Nichols Kaster, PLLP, 4600 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for Plaintiffs.

Andrew J. Voss, Jeffrey A. Timmerman, and John H. Lassetter, Littler Mendelson, P.C., 1300 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Court Judge

This matter came before the Court on Plaintiffs' Motion for Conditional Class Certification and to Provide Judicial Notice of a Fair Labor Standards Act ("FLSA") claim. (Doc. No. 15.) For the reasons that follow, the Court grants Plaintiffs' Motion.

I.   BACKGROUND

Defendant, a telecommunications company that provides wireless voice and data services, utilizes inbound call centers for its customer services operations, including a facility in Mankato, Minnesota (the "Mankato Call Center"). (Declaration of Joe Hall, Doc. No. 25 ("Hall Decl."), ¶ 1.) Operations began at the Mankato Call Center in February 2009. (Id. ¶ 2.)

1

Defendant employs two categories of telephone-dedicated employees at the Mankato Call Center (collectively "Representatives"): (1) Customer Service Representatives and Senior Customer Service Representatives who primarily respond to customers' billing inquiries and (2) Technical Support Coordinators I and Technical Support Coordinators II who primarily troubleshoot customers' technical device issues. (Id. ¶ 3.) Approximately 789 Representatives have been employed at the Mankato Call Center since February 2009. (Id. ¶ 4.) Representatives are placed on teams and report to a supervisor. (Id.) The supervisor reports directly to an associate director, who reports to the Director of Customer Service, Joe Hall. (Id.)

Plaintiffs are eight current and former Representatives from Defendant's Mankato Call Center. (Declaration of Reena Desai, Doc. No. 18 ("Desai Decl."), ¶ 3.) Their jobs required them to answer customer inquiries related to issues such as billing, equipment orders, adjustments to customer's plans, technical support, and troubleshooting. (Declaration of Susan Engelby, Doc. No. 18-2 ("Engelby Decl."), ¶ 3; Declaration of Kristin Frederick, Doc. No. 18-2, ("Frederick Decl.") ¶ 3; Declaration of Heather Jennings, Doc. No. 18-2 ("Jennings Decl."), ¶ 3; Declaration of Pamela Larson , Doc. No. 18-2 ("Larson Decl."), ¶ 3; Declaration of Rose Marie, Doc. No. 18-2, ("Marie Decl."), ¶ 3; Declaration of Christina Montenegro, Doc. No. 18-2, ("Montenegro Decl."), ¶ 3.) In order to perform their jobs, Representatives must log into a number of computer applications and a phone system. (Id.) Defendant paid Representatives a base hourly wage. (Engelby Decl. ¶ 2; Frederick Decl. ¶ 2; Jennings Decl. ¶ 2; Larson Decl. ¶ 2; Marie Decl. ¶ 2; Montenegro Decl. ¶ 8.)

Defendant required Representatives to use timesheets to track their time worked with a program called "VZWTime."  (Id.; Hall Decl. ¶ 5.)  Representatives are instructed that "all time worked should be reported to the minute" in VZWTime.  (Id. ¶ 6, Ex. 1, p. 14.)  Representatives are required each week to submit their VZWTime records for approval and payroll processing and then verify their accuracy.  (Id. at p. 24.)  If post-submission changes to VZWTime records are necessary, Representatives generally have six weeks after submission to request that their Supervisors make such changes.  (Id.)

Defendant maintains a formal corporate policy called "VZWTime: Recording Your Time Accurately" which requires Representative to log into their phone before commencing any other work-related activities and provides answers to timekeeping questions.  (Id. ¶ 8, Ex. 3.)  The policy requires Representatives to accurately record their actual working time, including any time spent booting-up and shutting-down their work computers and reviewing work-related materials before and after a scheduled shift.  (Id.)

Defendant formally evaluates Representatives based on four metrics: (1) the average number of calls a Representative fields each day adjusted for between-call wait times; (2) overall customer survey scores; (3) issue resolution as scored by customer surveys; and (4) Representative "upselling."  (Hall Decl. ¶ 16.)  Defendant also informally evaluates Representatives on metrics called "adherence" and "conformance."  (Id. ¶ 17.)  "Adherence" measures whether Representatives adhere to scheduled breaks and lunches.  (Id. ¶ 18.)  "Conformance" compares the time Representatives are scheduled to be fielding customer calls with the time they are actually spending taking calls.  (Id. ¶ 19.)

Plaintiffs assert that Defendant forces them and other similarly situated employees to work without pay before and after their shifts in violation of the Fair Labor Standards Act ("FSLA"). (Doc. No. 1, ¶ 8.) Plaintiffs allege that Defendant trained and instructed them to only submit time once they were logged into their phones and not to record any pre-shift login and post-shift logout time. (Engelby Decl. ¶ 5; Frederick Decl. ¶ 5; Jennings Decl. ¶ 5; Larson Decl. ¶ 5; Marie Decl. ¶ 5; Montenegro Decl. ¶ 5.) Defendant informally required Plaintiffs to be ready to take a call (or, to be "call ready") by the start of their shifts. (Id.) This meant that Plaintiffs had to have their computers booted up and be logged in and ready to use various computer programs and databases before their shift started. (Id.) Plaintiffs claim that Defendants required them to review company e-mails regarding pricing, billing, and equipment or service issues to prepare themselves to handle calls and receive acceptable evaluations. (Engelby Decl. ¶ 6; Frederick Decl. ¶ 6; Jennings Decl. ¶ 6; Larson Decl. ¶ 6; Marie Decl. ¶ 5; Montenegro Decl. ¶ 6.) They further contend that they were uncompensated for tasks completed after logging off their phones, such as closing computer applications on their computers. (Engelby Decl. ¶ 7; Frederick Decl. ¶ 7; Larson Decl. at ¶ 7; Montenegro Decl. ¶ 7.) Plaintiffs allege that they performed anywhere between five to twenty minutes of work before and after they logged in and out of their phones, for which they were not paid. (Engelby Decl. ¶ 8; Frederick Decl. ¶ 8; Jennings Decl. ¶ 7; Larson Decl. ¶ 8; Marie Decl. ¶ 7; Montenegro Decl. ¶ 8.)

## II.   DISCUSSION

Plaintiffs have brought this FLSA action on behalf of themselves and other similarly situated Representatives under 29 U.S.C. § 216(b). (Doc. No. 1, ¶ 8.) They move to conditionally certify their FLSA claims and request that the Court authorize notice to be issued to potential class members. Plaintiffs also request that the Court order Defendant to produce a list of all current and former Representatives at the Mankato Call Center for the purposes of providing notice of the collective action.

### A.   Conditional Class Certification

The FLSA authorizes employees to bring a collective action against employers to recover unpaid overtime. 29 U.S.C. § 216(b). Unlike a Rule 23 class action, no employee is a party to an FLSA collective action unless "he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (citation omitted). Courts have discretion, in "appropriate cases," to facilitate the opt-in process by conditionally certifying a class and authorizing court-supervised notice to potential opt-in plaintiffs. Saleen v. Waste Mgmt., Inc., 649 F. Supp. 2d 937, 939 (D. Minn. 2009) (quoting Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).

To proceed with a collective action, Plaintiffs must demonstrate that they are similarly situated to the proposed FLSA class. Brennan v. Qwest Commc'ns Int'l, Inc., No. 07-2024, 2008 WL 819773, at *3 (D. Minn. March 25, 2008). Determining whether Plaintiffs are similarly situated to the proposed class requires a two-step inquiry. Burch v. Qwest Commc'ns Int'l, Inc., 500 F. Supp. 2d 1811, 1186 (D. Minn. 2007) (citations

and quotations omitted). First, the court determines whether the class should be conditionally certified for notification and discovery purposes. Id. The plaintiffs need only establish at that time a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan. Id. Determination of class status at the notice stage is granted liberally because the court has minimal evidence for analyzing the class. Ray v. Motel 6 Operating, Ltd. P'ship, No. 3-95-828, 1996 WL 938231, at *2 (D. Minn. Mar. 18, 1996).

After discovery is completed, the court conducts an inquiry into several factors if there is a motion to decertify. Burch, 500 F. Supp. 2d at 1186. These factors include: (1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) other fairness and procedural considerations. Id. If the class is decertified, opt-in class members are dismissed without prejudice and the case proceeds only in the putative class representatives' individual capacities. Keef v. M.A. Mortenson Co., No. 07-3915, 2008 WL 3166302, at *2 (D. Minn. Aug. 4, 2008).

Since the parties here have not completed discovery, this case is at the first step of the two-step inquiry.[1] Thus, the Court only must determine whether Plaintiffs have come forward with evidence establishing a colorable basis that the putative class members are victims of a single decision, policy, or plan. Frank v. Gold'n Plump Poultry, Inc., No.

---

[1] "Even in cases where the parties have engaged in some discovery, plaintiffs must show only a colorable basis to achieve conditional certification under the first stage of review." Lyons v. Ameriprise Fin., Inc., No. 10-503, 2010 WL 3733565, at *3 (D. Minn. Sept. 20, 2010) (citations and quotation omitted).

04-1018, 2005 WL 2240336, at *2 (D. Minn. Sept. 14, 2005).  At this stage the Court "does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties[.]"  Brennan, 2008 WL 819773, at *3 (citation omitted).

### A.        Whether Plaintiffs Are Similarly Situated

The term "similarly situated" is not defined by the FLSA, but it "typically requires a showing that an employer's commonly applied decision, policy, or plan similarly affects the potential class members, and inflicts a common injury on plaintiffs and the putative class."  Keef, 2008 WL 3166302, at *2 (citation and quotation omitted).  "This decision lies within the Court's sound discretion."  Id.

Plaintiffs assert that members of the proposed class are similarly situated because Representatives were all subject to Defendant's unwritten policy requiring them to perform work before and after their scheduled shifts.  Their work included time spent booting-up computers, initializing software programs, reviewing work-related e-mails and intranet messages, and closing down the computer systems.  Plaintiffs assert that they were required to perform these tasks off-the-clock because if they were logged into the phone but were not taking calls, their job performance metrics were negatively affected.  Moreover, Plaintiffs assert that supervisors expected and instructed them to be ready to take calls the moment they logged into their telephones at the start of their scheduled shift and they did not report or receive compensation for pre-shift and post-shift responsibilities.

Defendant responds that Plaintiffs are not similarly situated because Representatives must independently record their hours. Defendant contends that it does not require Representatives to perform duties such as logging into and out of computer programs off-the-clock. To the extent any supervisor violated its policies and instructed Representatives to not record time spent working before and after their scheduled shifts, Defendant argues that such actions were "ad hoc" and do not illustrate a common policy.

In McCray v. Cellco Partnership, the court conditionally certified a class of plaintiffs with similar allegations against the defendant in this case. No. 10-2821, 2011 WL 2893061, at *2 (N.D. Ga. Apr. 8, 2011.) There, call center employees alleged that they were subject to a practice of "being required to perform pre- and post-shift duties without pay." Id. at *2. In granting conditional class certification the court stated that, "the Plaintiffs have met their burden, as it appears that all of the putative collective members . . . worked for the Defendant, performing substantially similar job duties, [and were] . . . subject to working under a practice of being required to perform pre- and post-shift duties without pay." Id.; see also, e.g., Lyons v. Ameriprise Fin., Inc., No. 10-503, 2010 WL 3733565, at *5 (D. Minn. Sept. 20, 2010) (granting conditional class certification where plaintiffs alleged a failure to pay for time spent logging into and out of computers at one call center in Minnesota); Burch, 500 F. Supp. 2d at 1188 (D. Minn. 2007) (granting conditional certification based on testimony of unwritten policy of requiring call center employees to perform unpaid work before and after shifts).

By contrast, in Thompson v. Speedway SuperAmerica, LLC, No. 08-1107, 2009 WL 130069, at *13 (D. Minn. Jan. 20, 2009), the court denied a motion to certify a

conditional class where it was alleged that the defendant did not compensate the plaintiffs for tasks, including answering work-related phone calls and performing gas-price surveys despite corporate policies requiring the defendant to pay for those activities.  The plaintiffs there had failed to show "that the reason why the employees were not compensated for these tasks is not because of human error or a rogue store manager, but because of a corporate decision to ignore [defendant's] published policies[.]"  Id. at *2 (emphasis in original).  A motion for conditional class certification was also denied in Saleen, where the plaintiffs alleged that they were not paid overtime when they skipped their lunch breaks due to a timekeeping system that automatically deducted a thirty-minute meal break.  649 F. Supp. 2d at 943. While the court found the issue of conditional class certification was "a close one," the plaintiffs were not seeking conditional certification for people "who work under one particular manager, or who work at one particular plant, . . . or even who work in one particular state."  Id. at 942–43.

Conditional class certification is warranted in this case.  Plaintiffs only request conditional certification of a class all of whom work at Defendant's Mankato Call Center.  Like in McCray and Lyons, Plaintiffs are alleging that Defendant trained and instructed Representatives to be ready to take calls the moment they logged into their phones and to perform certain tasks before and after they logged into their phones without pay.  Plaintiffs seek to conditionally certify a class of non-exempt call center employees who work, or have worked, out of the Mankato Call Center during a three-year period.  Rather than encompassing employees who work in different physical locations spanning multiple states as in Thompson and Saleen, the class here is limited to only one call

9

center where they all used the same timekeeping program, phone system, have a common director, and were compensated in the same way.  That the class here is limited to a relatively small number of employees at a single location bolsters Plaintiffs' claim that they were victims of a common policy or plan.

Plaintiffs' declarations provide a colorable basis to conclude that Defendant has a common practice of failing to pay its Representatives for time before and after their shifts.  Each representative Plaintiff has averred that he or she was regularly denied pay for the time spent booting-up computers, initializing software programs, reviewing work-related e-mails and intranet messages, and closing down the computer systems before and after their scheduled shifts.  Plaintiffs have also demonstrated that Defendant expected that Representatives' start and stop times recorded on their time sheet should mirror their phone login and logout times.  While Defendant claims that it trains Representatives to read e-mails between calls, Plaintiffs state that they lack to the time to do so.  According to Plaintiffs, Defendant was aware of its failure to compensate its Representatives because it regularly witnessed them performing unpaid tasks.  Moreover, the mere fact Defendant has a written policy requiring employees to record all their time does not defeat Plaintiffs' motion in light of Plaintiffs' evidence of a centralized training and instruction to Representatives to not report working time before and after they are logged into their phones.

Defendant's arguments concerning the individualized inquiries required and the merits of Plaintiffs' claims are inappropriate at this stage of the proceeding.  These arguments can be raised before the Court at the second, or decertification stage.

Dominquez v. Minnesota Beef Indus., Inc., No. 06-1002, 2007 WL 2422837, at *3 (D. Minn. Aug. 21, 2007). Plaintiffs have come forward with sufficient evidence that they and other prospective plaintiffs are similarly situated for purposes of conditional certification and facilitation of notice at this early stage of the litigation. Conditionally certifying a class does not signal agreement or disagreement with Plaintiffs' claims. It merely allows Plaintiffs to determine whether other Representatives are interested in pursuing this claim. See Keef, 2008 WL 3166302, at *2. Accordingly, the Court concludes that Plaintiffs have satisfied their burden of demonstrating that they are similarly situated for purposes of conditional class certification, notice, and discovery.

### B. Judicial Notice

District courts have discretion in appropriate cases to implement 29 U.S.C. § 216(b) by facilitating notice to potential plaintiffs. Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989). "Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." Id. at 171. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner." Id. at 172. "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Id.

The Court exercises its discretion to facilitate notice in this case. Court-facilitated notice is necessary in order to prevent the expiration of claims based on the running of the statute of limitations and because of the size of the class. The Court approves the proposed Judicial Notice provided by Plaintiffs and the 90-day opt-in period. Plaintiffs' counsel may send the Judicial Notice to putative class members by mail. Defendant is required to post the Judicial Notice in all break and lunch rooms at the Mankato Call Center. Plaintiffs' counsel may also send one reminder letter during this 90-day notice period with the following language added to the proposed letter provided by Plaintiff: "This Notice Serves to Notify You of This Pending Lawsuit. The Court Does Not Encourage or Discourage Participation In This Case."

### C. Production of List of Employees

The Court grants Plaintiffs request for Defendant to produce—within 10 days from the date of the Order—an electronic list of all Representatives employed by Defendant at the Mankato Call Center from February 2009, to the present, with their first and last names, last known address, and dates of employment. If, however, the Notice sent by Plaintiffs' counsel is returned to them by mail as undeliverable, Defendant, within 5 days of written notice by Plaintiffs' counsel, shall provide for any such putative class member their most recent telephone number and date of birth.

### III. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Conditional Class Certification and Judicial Notice (Doc. No. 15) is **GRANTED** and this matter is conditionally certified as a collective action.

2. Plaintiffs' proposed Judicial Notice (Desai Decl. Ex. 5) is hereby **APPROVED**.  The Court authorizes Plaintiffs' counsel to mail such notice to the putative class members identified in the list provided by Defendant.  The Notice shall provide for a 90-day opt-in period.

3. The Defendant is ordered to post the Judicial Notice in all break and lunch rooms at its Mankato Call Center.

4. The Court authorizes Plaintiffs' counsel to send one reminder letter as set forth in Desai Decl. Ex. 6 to the putative class with the following language included: "This Notice Serves to Notify You of This Pending Lawsuit.  The Court Does Not Encourage or Discourage Participation In This Case."

5. The Court orders Defendant to provide Plaintiffs' counsel with a list of all Representatives employed at the Mankato Call Center since February 2009; this list shall include the full name, address, and dates of employment and shall be in electronic and importable format.  Defendants are ordered to provide this list within ten days of the date of this Order.  If the Judicial Notice sent by Plaintiffs' counsel is returned to them as undeliverable, Defendant, within 5 days of written notice by Plaintiffs' counsel, shall provide for any such putative class member their most recent telephone number and date of birth.

Dated: July 2, 2012

<u>s/Susan Richard Nelson</u>
SUSAN RICHARD NELSON
United States District Judge
